Mr. Weddle, you are reserved two minutes for rebuttal. You can begin whenever you are ready. Yes, thank you, Your Honor. Good morning, Your Honors, and may it please the court, Justin Weddle for the appellant Suresh Munshani. As the court may realize that the case involves two brothers as co-defendants, Sonny Munshani, who's not part of this appeal, and Suresh Munshani, so I'll just refer to them by their first names. The common theme in this appeal and in the case below is that the government is doubling down to rescue what was a failed charge and a floundering trial. Why did the prosecutors charge a 2011 to 2018 scheme as a single overarching conspiracy without any proof of any other conspirators aside from Suresh? I don't know, and they haven't told us, but for sure it's not because of phone calls placed to Itola or Kulkarni. Itola was the CFO of Protegrity, where Sonny was the CEO, and that Sonny systematically- Does it really matter for purposes of the conviction whether or not it began in 2011, 2013, or 2015? I think it would matter. I think it would matter a lot to the government's credibility and its arguments on appeal for it to say we were wrong. What really happened here is a 2015 to 2018 conspiracy. Over half of the charge was never proven, and we had no evidence of it, but it doesn't matter for the following reasons. That would be a different argument from what we're hearing from the government. They're saying there's nothing to see here. Other than their credibility. As a matter of law, what is it? As a matter of law, I think that's not the same conspiracy, Your Honor. It's not the same conspiracy for two people to engage in five transactions sporadically in a short period in 2015 and a short period in 2018. That's not the same conspiracy as what was charged, and we have no idea whether the jury found that it was the same conspiracy, according to typical jury instructions that a variance on dates is not fatal as long as it is the same conspiracy. We have no assurance of that because there was no instruction from the court on what exactly was the charged conspiracy. The court instructed— The charged conspiracy was in the indictment. The court's role is to tell the jury, you must find that they've proven the charged conspiracy, right? There's no indication that the jury had the indictment, and there's no explanation in the jury instructions explaining what the indictment said. I don't think it's the same— But the allegations about your client's conduct are beginning from 2015, right? That's right, Your Honor. So why wouldn't it just be harmless if there's some stray allegation about some conduct occurring before any of the allegations against your client? Well, it's harmless because in 2015, Your Honor, the conduct in 2015 was time-barred, absent this overarching, non-existent conspiracy. All right, so then you're not saying the problem is that they talked about it starting in 2011. You're saying the problem is they should have charged it as two separate conspiracies happening in 2015 and happening in 2018. That's a different argument, right? Well, that's one argument, and that is different, and it's one argument— So if the error was they shouldn't have started it in 2011, they should have started from 2015, but it did continue through 2018, then that would be harmless to your client. So you're saying the problem was they should have realized that the period of time in which they weren't making transactions between 2015 and 2018 broke off the conspiracy, and that should have been two conspiracies, right? No, Your Honor. That's the government's argument, and it's wrong. It essentially assumes away the fundamental argument that we're making. The argument that we're making is that they never proved the existence of the charged conspiracy, and even if they had charged a conspiracy from 2015 to 2018, they never proved the existence of that conspiracy such that they could invoke the rules that Your Honor just mentioned about a lapse in time or breaking off a conspiracy. Without a conspiracy first being proven, you can't break off of it or— What do you mean they don't have a conspiracy? They have a bunch of fraudulent financial transactions in both 2015 and again in 2018 where your client takes the money from the victim, puts it in a bank account, takes some percentage of it, and then transfers the rest of it to his brother. Why isn't—if the jury believes that there was a fraud, and I think it was even—the defense argued that it was a fraud but that your client was duped by his brother, I don't understand why that's not a conspiracy. It's because there was not a scintilla of proof at any time in 2015 that my client did the acts that Your Honor just mentioned with a guilty mens rea. Sonny Manchani was basically a crime spree against protegrity in myriad ways beginning in 2011 until 2018. He did— Why did your client lie to the bank and say that the victim company was a customer and that wasn't true? That is the only piece of evidence, Your Honor, on which any finding of mens rea— That's what jurors do all the time about mens rea. They make inferences from the evidence. I mean, there are other— I agree. I picked what I think was the strongest one, but— That's the only one, Your Honor. That is the only one, and that one occurred— His brother warned him, I think, in a text message to—I forget the exact wording—to be discreet, to watch what you're doing. He said $40,000 is not a lot of money, but don't blow it all, and be conservative, and be private in your dealings. But it's not just about be private in your dealings, right? Isn't he just getting a whole bunch of money for not doing anything for protegrity? I mean, couldn't a jury infer, like, he's getting a whole bunch of money for not doing anything but opening up these bank accounts and not telling anybody about it? No, because all of the evidence, Your Honor, was at least equally consistent up until the one email that Judge Bianco just mentioned, which occurred in August 2018. Until that email in August 2018, all of the evidence—circumstantial, direct, any evidence—was entirely consistent with Suresh also being duped by his brother, Sonny, just as Sonny duped everyone around him at Protegrity in order to steal approximately $27 million. So he was duped that he was getting these larger sums of money just for having opened the bank accounts? Your Honor, he was getting less than 10 percent of the money from— What did he do for that money? Your Honor, it's the government's obligation to prove that he wasn't duped. Sonny could have said, this is my money. Well, I understand the evidence that Judge Bianco mentioned, but I'm just saying the overall scheme, I mean, couldn't a jury also infer that when you get large sums of money for not doing anything, that also might reinforce the idea that you should have known something was up or you might have known something was up? Yeah. So those are two very different things, Your Honor. What are? Should have known something was up and might have known something was up are two very different things. And the government's argument was must have known something was up, and that's not— Well, you were added on them. Speaking off the cuff, maybe it should be—so then fine. So talk about it as must. So you think it's not true that if your brother, who's the CEO, tells you to open a bunch of bank accounts and not tell anybody about them, two bank accounts where, like, there's a typographical error between them to sort of make it seem like they're confused, and not tell anybody about them, and then he gets large kickbacks and gets to keep part of the money, it's impossible for a reasonable jury to infer that the person who received that money and opened the accounts knew that there was something inappropriate about the transfers. It's impossible for a reasonable jury to conclude that beyond a reasonable doubt. That's not an inference. That's a conclusion, Your Honor. And this Court has said that if the evidence, including circumstantial evidence, points equally or almost equally to a theory of innocence as to a theory of guilt, no reasonable jury can find guilt, can conclude guilt in that circumstance beyond a reasonable doubt. It's a coin flip. If Kulkarni can direct that a $3.5 million check be cut and handed to Sonny Munshani when he's stealing that money from ProTegrity and telling Kulkarni it has something to do with taxes, if that person can be duped and is doing things that don't make sense, like cutting a check not made out to the federal government relating to taxes for $3.5 million at the direction of Sonny, she doesn't understand it, the accountant said there needs to be IRS backup, if she can be duped, then the things that Suresh did can also be the result of him being duped. And it's the government's burden to prove beyond a reasonable doubt that something else happened. So in that case, if there's this evidence that it was something related to taxes, what is the explanation that your client, that duped your client, what did he think he was doing? There's no evidence whatsoever about what my client was told about that $300,000 transfer that came from that $3.5 million theft that was perpetrated entirely by Sonny all by himself but involved a number of people at Protegrity participating in it as dupes, such as the government's witness, Mr. Kulkarni. So there's no evidence about what my client was told. There's no evidence that my client knew that there was something wrongful about that $300,000 transaction because it occurred in 2015. The only piece of evidence that my client had any inkling that something wrongful was afoot was when he said to his bank in an e-mail that he expected to receive checks from a customer. That was not true. These were checks that were coming from his brother. So until 2018, there was not a scintilla of proof of guilty mens rea. And the government glossed over all of this with a charge they never could prove, never did prove, that should be reversed. Thank you, Mr. Well. You have your two minutes for rebuttal. We'll hear from the government, Mr. Capozzi. Good morning, Your Honors. I'm Timothy Capozzi. I represent the government in this case, and I represented the government below. The appellant participated in a long-running scheme to defraud a data security company for which he did no work of $860,000. He kept approximately $150,000 of that stolen funds, and he funneled the rest to his brother. As Judge Rakoff concluded, the sufficiency claim here is not a close question. There's ample evidence, when viewed in the light most favorable to the government, from which a jury could, and in fact did, rationally conclude that the appellant agreed to steal and launder money from the victim. Now, counsel has referred repeatedly to the email referring to the lie to his bank. That's just one of much evidence, which consists of emails, text messages, bank records, cell phone location data, all of which was fair for the jury to apply and infer that the defendant was a knowing participant in this scheme. This court has repeatedly said that circumstantial evidence is sufficient to establish the elements of a crime, including mens rea, and that's particularly important in a case like this, which is a conspiracy case, where secrecy is the nature of the operation. All right, so circumstantial evidence could be sufficient. It's not inherently always necessarily sufficient. So opposing counsel just said the evidence here is at least equally consistent with him thinking there was innocent explanation. So what's the basis for the jury to infer that he knew that he was engaged in an illicit operation? Well, Your Honor, in addition to the message in which he lied to his bank about this company, which he did no work for, being his customer, there was a 2015 message, which I believe Judge Bianco referred to, where he agreed to be private about his business. There was a 2015 e-mail in which he instructed someone else to register a company in the name of the company that they were using to defraud the protégé and said, use your information. There was a warning to his brother that a certain phone number would show up in Google searches. There's certainly no reason why a jury can't listen to evidence from 2018 and infer from that what the mens rea was in 2015. But even without that, we have these 2015 messages between him and his co-conspirator brother. But your position is that that's the same conspiracy because it's the same parties and the same accounts, right? Absolutely correct, Your Honor. And you think a jury can infer from the fact that he's getting large amounts of money for work that he hasn't done that he knew that was illicit? Absolutely, Your Honor. Again, Judge Rakoff, who presided over the trial, viewed this as not a closed question, and that's because of the sheer volume of evidence that was both his own words with his co-conspirator, which clearly suggests the desire to keep things secret under wraps, and then also the course of conduct, opening companies in names that just happen to be the name of the company that your brother is defrauding his employer with. And so there absolutely was sufficient evidence. Is there evidence that he knew that the names of the companies on the accounts were the counterparties to contracts with his brother's company? Did he know the significance of CPL Associates or whatever it was? Well, what we have is evidence that he traveled to, you know, among the evidence we have is in 2015, he traveled to meet with his brother in the vicinity of ProTegrity. They meet. Shortly thereafter is when he sends the email to someone else to register a company in Canada in the name CLB Associates. Then we have him traveling back to Canada promptly himself registering a company that is almost the exact same but slightly different, CBL Associates, which happens to be the name of the company on the check that was issued by the victim company that his brother caused to be issued. And so we don't have evidence that shows that he knows about the contract, but we certainly have evidence that shows that he knew about the significance of the name of the company because he was initially going to register apparently a company in slightly different, then apparently gets the check, the check which has a slightly different, and that's the company he registered, that's the name that he adds to his bank account, and then he deposits it, and they're on their way, and they continue on their way. Granted, there's a period of time, a period of years, where there were no subsequent checks, but it resumes, same parties, same victim, same bank account, and no intermediate abandonment of this scheme, and therefore it's the continuing conspiracy. If the court has no further questions, I'll rest on our submission. All right, thank you. Why don't we have three minutes, two minutes in the box. You know, once again, the government is just eliding different time periods and pieces of evidence. The e-mail that the government just referenced, which is at the supplemental appendix, sorry, the government's appendix, page one, is an e-mail from August 2018, which is the e-mail that says, this is my home number, which will show up in a Google search. So if there's evidence in August 2018, like an e-mail that he sends to his bank saying, I'm expecting money from a customer, or an e-mail saying, by the way, this will show up in a Google search, that does nothing to establish the existence of a conspiracy at any time before that, even if it might have been permissive. Well, I mean, I understand. Your premise is that it's not one unitary conspiracy. But if, in fact, it is, then evidence of mens rea at any time during the conspiracy would suggest a mens rea during the whole period of the conduct, right? So like you have to argue both that there isn't the evidence, but also that there was a kind of cessation of the conspiracy after 2015, and then the resumption of a new conspiracy. I still disagree with what Your Honor is saying, that there has to be a cessation and then a resumption, because there has to be the formation of a conspiracy. And there's no evidence, and Sunny Munshani, there's a mountain of evidence that Suresh Munshani was duped. What is that evidence? The entire course of conduct of Sunny Munshani, who duped everybody around him, his CFO, his vice president of finance, his controller, pro-tegrity, whatever. He could say to his brother, this money belongs to me because I have some side deal with my bosses. It's a privately held company. They want to send it through a different company name. I'm in a fight with my bank. I can't put it through my bank the way I normally do. Can you just put this name on your bank and cash a check and send it to me? I'm getting this extra bonus. You know what? You're such a good brother. I'm going to give you a gift of less than 10 percent of that. What is the evidence in the record that he actually said all that? You're just saying he could have said that, right? I'm saying it's the government's burden to disprove it. It's not the government's burden to show it, right? But if they point to all the evidence they've just recounted, saying that a reasonable jury could conclude that he knew about the illicit nature of the transactions and the money, then in order to counteract that evidence, there must be evidence pointing the other direction, right? No, Your Honor, because it's their burden to— So you're just saying, regardless of these possibilities, that the evidence that they've put forth isn't sufficient to establish that he had knowledge, right? That is my position, but there's more, though, Your Honor. Even if it is possible for two emails in 2018 to relate back to 2015, and despite the mountain of evidence that Sonny was duping everyone around him, even if it was possible for a reasonable jury to find either way on that guilt or innocence, you would need to have a fair trial in order to have any assurance that what happened here is fair and just. And that's not what Suresh had, because there was no instruction. There was nothing in the instructions, and the jury did not have the indictment, such that they would know that these issues mattered. Was there the formation of a conspiracy in 2015 with guilty mens rea? You have to find that jury. You have to find that that was proven by the government beyond a reasonable doubt in order to find the existence of this conspiracy. If they had been told that, we'd be in a totally different situation. I don't think it would be enough as a matter of law, but even if it were enough as a matter of law, we have no assurance that the jury found anything. But the government had approved the charged conspiracy in the indictment. You're saying they didn't have a copy of the indictment, but I'm sure he summarized what the charges were in the indictment. There was no summary of what the charges were? No, he said the charge is a wire-fired conspiracy. All right. That's up to lawyers to argue in their summations. If the judge instructs them they've got to prove this charged conspiracy, you would think defense counsel would point out some of the things that you're claiming were insufficient. But if the jury's not told that they have to find a conspiracy from 2015 to 2018 that was open-ended and not sporadic and that was formed with guilty mens rea, if they're not told that, then the jury can listen to the elements and say, I've got to find an agreement and I've got to find an overt act. And I find the agreement and I find the overt act occurred in August 2018, guilty as charged. They have no idea what the charge was. No one told them that. And I don't think it's sufficient for the lawyers to stand up and say the charge is a charge from 2011 to 2018 and they didn't prove that. It needs to be a legal instruction, Your Honor. We understand. Thank you, Mr. Weddle. Thank you, Mr. Capozzi. We'll reserve decision. Have a good day.